Good morning, ladies and gentlemen. We are doing the argument today remotely, and of course that creates a potential problem of people not knowing when others are trying to ask questions or speak. So I will listen as carefully as I can and see if I can keep things in order. There's always, of course, the problem that there may be occasional communications difficulties. We will work that through at no cost to the attorney's time. I'll also try to give people warnings when rebuttal time begins or when there's one minute left in the argument time. So our first oral argument this morning is Beeler v. Saul. Mr. Craig. Thank you, Your Honor, and may it please the Court. This case presents a question of statutory interpretation. The interpretation of the statute offered by the Social Security Administration and endorsed by the District Court rejects the clear statutory definitions provided by Congress and by the international agreements between the United States, Canada, and Quebec. It also disregards entire phrases. Mr. Craig. Yes, Your Honor. Before we get into the merits, I have a question about subject matter jurisdiction. Yes, Your Honor. Weinberger v. Selfie says the jurisdictional minimum is that the claim have been presented to the agency. Is it clear that that was done here? It is, Your Honor. Lorraine Beeler and the other beneficiaries did present their claims to the agency. Lorraine Beeler herself, as the District Court noted, actually received a final decision while the case was pending. But in the meantime, the Ms. Beeler and the other named class members. Okay. As long as we're agreed, I'll ask the same question of Ms. Soni, that the claim was presented to the agency, we don't have a problem under Weinberger. Okay. Please proceed. Thank you, Your Honor. So because we have a case of statutory interpretation, we begin with the language of the statute. And the relevant language is split across various sections of the Social Security Act. And then it also requires us to look at the international agreements. So the key statute in this, the first part of it is 42 United States Code, Section 415, specifically, subsection 7A2. And that section has, that section defines the beneficiary's argument is based upon the scope of the WEP, and not the exclusion from the WEP, as earlier cases decided by this court and other courts have been. So when we look at the scope of the WEP under that subsection 2, it says that the WEP applies to a person who... Counsel, you're losing me. I don't understand. It sounds like you're using the word WEP, which I don't think is English. Oh, I apologize, Your Honor. So the statute defines the scope of the windfall elimination provision, sometimes abbreviated WEP. We are not specialists. So if you would use real English words, I think that would help us. I will do so, Your Honor. Thank you for the reminder. So in looking at the scope of the windfall elimination provision, that section says it applies to people, a person, quote, who first becomes eligible after 1985 for a monthly periodic payment, and then has a long parenthetical providing certain clarifications. And then it says, which is based in whole or in part upon his or her earnings for service which did not constitute employment, as defined in Section 410 of this title. And so then, of course, we have to look at the definition of employment provided in Section 410. And there we have the definition. The term employment means any service performed, and then you have to skip down to subsection C for the relevant portion for this case, if it is service regardless of where or by whom performed, which is designated as employment or recognized as equivalent to employment under an agreement entered into under Section 433 of this title. Section 433 of the Social Security Act is the statute that authorizes the President to enter into international agreements for Social Security concerning Social Security benefits. And the agreements themselves leave the determination of what constitutes employment to the domestic laws of contracting states. And importantly, it is undisputed that all members of the class, all the beneficiaries here received Canada Pension Plan or Quebec Pension Plan benefits as a result of work that Canada recognizes as employment. So the Social Security Administration responds and the district court accepted this argument that employment means really as a defined in 410 really means covered employment, which, as Social Security says, means employment subject to Social Security taxes. But employment as defined in Section 410 is not limited to service, which is designated as employment or recognized as equivalent to employment in the United States. Mr. Craig, this is Judge St. Eve. If we agree with your argument, does that make the parenthetical exclusion in Section 415 of the provision number two with respect to totalization benefits completely unnecessary? No, it doesn't make it unnecessary, Your Honor. And in fact, that section, subsection two, was a later amendment to the statute that did not change the later section defining the scope of the WEF. So the scope of the WEF has always been defined the same way. In terms of the relevant, you know, why the exclusion still has ongoing vitality, it makes clear that, you know, when people receive a Social Security benefit that is based not entirely on from that. But the definition, you know, of the scope of the WEF, the statute defines the scope of the WEF. Scope of the what? Of the provision? I'm sorry, the windfall elimination provision. Thank you. I have it to heart. I apologize, Your Honor. And so because the scope of the windfall elimination provision is defined in that way, it may be unclear whether when the benefits are, as they say, totalized, whether that would fall within the definition or not. And the exclusion makes clear that it does not. And our argument does not rely upon the exclusion itself. Mr. Craig, how would you have us read this language from Title 42 U.S.C. Section 433 C.1.B., the phrase but not under both? How are we to read that and consider that under your argument? Well, that makes clear that when employment is to be, employment wages are to be taxed, or when there's going to be a determination of which section, which country's Social Security laws cover the employment, it will be either covered by, you know, in this case, the United States or Canada, but not both at the same time. But that section doesn't mean that something that is employment isn't covered under an international agreement if it's not covered by U.S. Social Security taxes. On the contrary, the but not both at the same time. And I don't see that phrase at the same time in this statute. Where are you getting that qualifier? Well, it's, I suppose it's implicit in that at any given time, something is going to be subject to one system's Social Security or the subject to, you know, Canada's at one time or the United States is another. This is, you know, I think the statute just makes clear that any employment is going to be allocated to either one system or the others. But coverage is bilateral in the sense that it's going to be covered by one or the other. You may continue. Thank you. Thank you, Your Honor. Mr. Craig, this is Judge St. Evigan. Would you agree that if we agree with your position here, that your clients, in a sense, would be getting a windfall? No, Your Honor. They would not be getting a windfall. They, none of the, the district court following Social Security's arguments ascribed to beneficiaries the argument that their wages in Canada should count toward their Social Security benefits. That's never been the beneficiary's position. The beneficiaries seek only the Social Security benefits earned by the employment that was covered by U.S. Social Security taxes. And all of the named beneficiaries, in this case, and all members of the class, have worked in the United States subject to Social Security taxes long enough that they independently earned their Social Security benefits. What's now happening, and what's been happening starting around 1998, is the United States is reducing those benefits because of benefits that were independently earned in Canada. So it's not a windfall to the beneficiaries to receive the amount to which they're entitled under the Social Security laws. I think one can reach that conclusion only if one accepts the erroneous argument made by Social Security that there's, that the beneficiaries are seeking a benefit under Social Security for work that was taxed by Canada. And that's simply not the case. But aren't you asking, under your construction of this, that the time that they worked in Canada, not that they would get Social Security benefits for that period of time, but the time they worked in Canada, where they were getting Canadian benefits, under the U.S. system, that time period would essentially be calculated as if they were unemployed? It would be calculated, well, their primary insurance amount under Social Security would be calculated without regard to that employment. That's true, Your Honor. And would it be calculated as if they were unemployed during that period? To result in an increase in benefits? It doesn't increase their benefits. Due to the progressive nature of Social Security's payment system, however, it might be, their benefits may be proportionally higher than if they had worked the entire time in the United States. That's true. So why wouldn't that be a windfall? And maybe it is, and that's just the way the statute, there's a loophole to it, but it seems to me, whether you look at it that it's proportionally higher, or they're getting more taxes, which I understand you're not pursuing that line, but wouldn't that still be a windfall if it's proportionally higher? I think, well, I'm only going to use the word windfall as beneficiaries maintain Congress intended it, and the windfall doesn't exist in this case because the work they did in Canada did constitute employment under Section 410 of the Social Security Act. And it's also important to know, I think, that when we talk about windfall, the windfall elimination provision was really brought about because of people receiving domestic pensions from municipalities or states, typically, or from the federal government before, I think, 1984. But those pension amounts, as we explained in our brief, are on average much higher than the Canada pension plan or Quebec pension plan amounts, which are lower both in Social Security benefits as well as typical municipal or state pension benefits. And that's significant because I think it's clear from the statutory language of the Social Security Act as well as from the international agreements that Congress's intent was that the contracting parties would work out between themselves if there were going to be reductions based on receipt of other countries' benefits. And here, as we point out, Canada does not reduce the amounts paid to beneficiaries under the Canada pension plan or the Quebec pension plan, whereas the United States does or has at least since 1998, which is in contravention of the statutes, the regulations, and we contend the international agreement as well. And I see I'm right about to 15 minutes, and so I did reserve five minutes for rebuttal and would ask the court to allow me to do that. Certainly, Mr. Craig. Thank you. Ms. Sone. Thank you, Your Honour, and may it please the court. This is Sushma Sone for the Commissioner of Social Security. I'd like to get right to this windfall. What is the windfall with respect to these plaintiffs? We start with the fact… Ms. Sone, would you please start with the subject matter jurisdiction question? Yes, Your Honour. On this point, we agree with the plaintiffs that the claims were presented, so there is no Weinberger v. Southie problem. Thank you. Okay. So we start with the fact that the plaintiffs are receiving two Social Security benefits. One is from the Government of Canada based on their work in Canada when they paid into the Canadian system, and the other is from the U.S. based on their work here when they paid into the U.S. system. The way that the U.S. benefit is calculated is based on a statutory formula that is heavily weighted to give an advantage to people who are career low-wage earners, in that way since the beginning. The problem is that the formula averages your wages over the course of about 35 years, and the effect of that is it only sees your covered employment, meaning your employment on which you paid Social Security taxes. So the problem there is that it doesn't distinguish well between someone who spent 35 years in low-wage covered employment and someone who spent 10 years in covered employment of any wage and 25 years in non-covered employment on which they did not pay any Social Security taxes. So it does that even though these two people are not similarly situated. The person who worked in non-covered employment typically gets a pension, and so when the person who is not a career low-wage earner gets that weighted benefit, it's a windfall to him. That is the windfall. So what Congress did in 1983 was correct the formula for certain people. It said we identify the people who are getting both a Social Security benefit under the U.S. system and a monthly periodic payment that is based in whole or in part on earnings for non-covered services. And for those people, a different adjusted formula applies. It's a formula that gives them the correct benefit, and it takes away the weighted advantage that was only intended to go to career low-wage earners. This is – this applies – this windfall provision applies across the board regardless of where you actually performed your non-covered work. It applies to people who worked their entire time in the U.S. in covered and non-covered employment. So, for instance, as the plaintiff mentioned, state and local employees such as police and firefighters, federal government employees before – who were hired before 1984. None of them was doing what was defined as employment under the Social Security Act. None of them paid Social Security taxes on that work. So, if they qualify for Social Security benefits because at some point they did work in covered employment and they are getting their civil service pension, then the windfall provision applies to them the same way it applies to plaintiffs. And there's nothing in the statute or in the legislative history that indicates that Congress intended it to apply to police and firefighters but not to people who worked in another country. So, I hope that that explains where the windfall is. The windfall is not that these individuals are getting money from Canada. The windfall is this weighted benefit that they were never intended to receive. And the windfall provision is to give them their correct benefits under an adjusted formula. Your Honor has also asked a question about whether their interpretation, the plaintiff's interpretation of the statute, renders one of the exceptions to the windfall provision irrelevant or nullified. And the answer is yes. And here's why. What the plaintiffs are essentially saying is that they worked in Canada a long time ago. They paid into the Canadian system. And then they moved here. And they now want to recharacterize that past period of employment when they were participating in the Canadian system. They want to recharacterize that as both covered by Canadian law and covered by the U.S. law. And that is inconsistent with the statute for a number of different reasons. One of which is that, as the district court pointed out, there is a provision in the Social Security Act that says employment gives rise to a period of coverage under the U.S. system or under the foreign country system, but not under both. So you cannot have a period of coverage, a period of work in Canada that was both part of the Canadian system and part of the U.S. system. Because being part of the U.S. system means, by definition, the contribution requirement applied to you. And that's what the statute is trying to prevent. It's trying to prevent dual taxation. It also, their interpretation conflicts with another part of the statute, which is the authorization for the totalization agreements and for totalizing of benefits. And that's where it gets into the exception that is in the windfall provision as well. There's the exception for totalized foreign benefits. Under their interpretation, if the work that they did is retroactively covered employment for purposes of the U.S. Social Security Act, then you don't need to ever totalize benefits because the formulas look at covered employment. You establish your eligibility based on your periods of coverage, meaning your covered employment. So they would simply add the period where you had working covered employment in the U.S. and add that to your Canadian employment, and there's no need to totalize, ever. It also is completely inconsistent with another provision of the statute, which says that when you have totalized benefits, it doesn't actually, because what you're doing, if I can clarify, when you're getting totalized benefits, you're getting them because, let's say, you worked in Canada and established eligibility for coverage there, and then you moved to the U.S., but you work only six quarters. Six quarters isn't enough. You have to have 40 quarters of coverage in order to get benefits under the U.S. system. So you don't have that. You have only six, and if there's a totalization agreement in place, as there is, you are allowed to get credit for the work that you did in Canada that was covered under Canadian law. You just get to credit that under the U.S. system in order to establish eligibility. The totalization agreement doesn't let you count your Canadian work for the calculation of your benefit because you didn't actually, that wasn't actually covered employment in the U.S. You didn't pay into the U.S. system. So there's a provision in the statute that says, in that circumstance, when you're totalizing U.S. benefits, you get a prorated U.S. benefit that reflects only your period where you worked in covered employment in the U.S. You're going to get a fraction. You're going to get six over 40, that percentage. But if your work in Canada was actually covered U.S. employment, then you get the whole thing. You get your benefit. It's going to be calculated as though everything you did in Canada was covered employment, the same as what you did in the U.S. Ms. Soni, look, I understand the arguments you're making about the intent of the provision. But looking at the plain language, the windfall provision incorporates the definition of employment in Section 410. If I understand your argument, you're arguing, and the district court agreed, that that definition of employment is equated with covered employment. Yes, Your Honor. So, where in the statute should we come up and agree with you that that employment refers to covered employment as opposed to just employment, whether covered or not? Well, again, I would take a step back and I would say, under the U.S. system, the Social Security Act defines employment in Section 410 only for the purpose of determining when the contribution requirements apply. If it isn't work, if the work is not employment as defined in the Social Security Act, then the contribution requirement doesn't apply. Is there anything in the Social Security Act, though, that says that it can only be employment in that sense? Well, in fact, Your Honor, if we look at the text of Section 415, and that is in our addendum, starting on page 13, we see that there's a windfall provision, and it, as you say, which, let's skip down to where it says, based in whole or in part upon his or her earnings for service, which did not constitute employment as defined in Section 410. And then, very helpfully, Congress put in an explanatory parenthetical. Hereafter, in this paragraph, and in subsection D3, referred to as non-covered service. Non-covered service has a meaning. The courts understand it. Congress understands it. If you look at the legislative history of these provisions, they use non-covered service, non-covered employment to mean employment on which there was work that was not defined as employment in Section 410, and work on which no one paid the Social Security contribution requirement does not apply. But that definition isn't incorporated here. It defines the provision, which is based in whole or in part, as non-covered service. It seems to me that you're reading an extra definition into that. Your Honor, the definition here, which does not constitute employment as defined in Section 410, is explained in the parenthetical. Those two phrases mean the same thing. Are you arguing that it's ambiguous? No, Your Honor. I apologize. I didn't mean to run over your question. But no, we are not arguing that it is ambiguous. We are arguing that under the plain language of the windfall provision, it means that we are only looking at employment as defined in the statute. And the only reason that employment is defined in the statute is for the purposes of determining when the contribution requirement attaches. That is the foundation of the Social Security system. Benefits are only awarded based on the fact that you have contributed to the system. If you didn't contribute to the system, you don't get benefits. That's why you have to define what is employment for purposes of the system. So, for instance, that person who worked for the federal government before 1984, if they worked their entire career for the federal government and they did not ever work in non-covered employment, they did not ever work in covered employment, they do not get a Social Security benefit. So that's the only reason for which you are defining employment. But let's also look at Section 410, which is part of the statute that defines employment. So employment includes basically any service performed in the U.S. That doesn't apply here. The Canadian employment was not in the U.S. It applies outside the U.S. by U.S. citizens working for U.S. employers or foreign affiliates. Well, that doesn't apply because they were Canadian citizens working for Canadian employers. So plaintiffs pin their entire argument on C. And if we could just read that text, if it is service, regardless of where or by whom performed, which is designated as employment or recognized as equivalent to employment under an agreement entered into under Section 433. And, again, this is in our addendum starting on page 4 of our addendum. So plaintiffs are saying that means that if the totalization agreement makes it so, then it's employment. And the problem is the totalization agreement with Canada does not say that their work in Canada for a Canadian employer in which they contributed to the Canadian system was actually U.S. employment. It does not say that. The district court correctly recognized that. Does the agreement with Canada designate anything as employment within the meaning of Section 410? No. In fact, so it's helpful to understand what these totalization agreements are intended to do. They are for limited cooperation between two sovereign nations that have their own laws and their own distinct social security systems. And they are about coordinating at points of intersection, not for all purposes. There's nothing about this totalization agreement that says from now on, all work done in Canada is exactly the same as work done in the United States. They don't say that. And why would they? The two countries have different systems. It's about points of intersection. And one point of intersection is where someone, let us say, from the United States goes to work in Canada. Ordinarily, under various territorial principles, a place where you work will pass you for their purposes, for their social security systems. But a totalization agreement says that the countries can come to an agreement and they can say, we will recognize there are certain circumstances when, in fact, it makes more sense for the person's home country to continue to cover them and require contributions. And then the place where they work kind of will step back. And that will be for continuative coverage in the home country. So that's one place to avoid dual taxation. And the other point of intersection is, as we stated earlier, when someone works in several different countries, but they don't work long enough to establish eligibility for a benefit. So let's say someone works in – a Canadian works in the United States for a number of years, but they don't work for 40 quarters. And they would like to get some – establish some eligibility because they did contribute to this system. Then you are allowed, under the totalization agreement, they set out rules under which you can borrow your credit from Canada and use that to establish eligibility. But the totalization agreement does not say that borrowing of credit, that borrowing of periods of coverage, means that the work in Canada that you're borrowing actually was U.S. work. It was covered under the U.S. system. That isn't the case. Because if it were, then you wouldn't need to totalize. And then you would have a totalization agreement under which you would never totalize benefits. It doesn't make any sense. I'd like to address very briefly – You have a little less than two minutes left, Counsel. Then it will be very brief. Then I was going to address the argument about equal treatment under Article 4 of the totalization agreement. The plaintiff's argument is a complete misreading of that provision. Under that provision, the U.S. has to treat U.S. citizens and Canadians the same in the payment of benefits. And it does do that. It applies to the one-fall provision equally to people who worked entirely in the U.S. and people who worked in the U.S. and Canada. They get treated the same. It doesn't mean that the U.S. cannot apply the one-fall provision unless Canada has a one-fall provision of its own. That's not the reason that countries enter into these totalization agreements. It's not that they can be required to have the same laws. They're going to have their own separate, distinct laws. They just have to – they cannot discriminate against their citizens and citizens of other countries in their award of the benefits. I want to make sure to address any questions that the court may have because I've spoken for a very long time. Well, thank you very much, Counsel. Thank you, Your Honor. We ask you to affirm the decision of the district court. That's right. Anything further, Mr. Craig? Briefly, Your Honor. The government's argument appears to boil down to the use of the parenthetical expression non-covered service in Section 415 in attempting to really disregard the statutory definition provided by Section 410. If the government's argument were correct, the reference from 415 to 410 would have been entirely unnecessary. Further, when we talk about coverage under an agreement, this is not the same thing as covered by domestic U.S. Social Security taxes. And in fact, the United States in other cases has argued really the opposite position. For example, in the Ehrlich case that we cited in our brief, the court, agreeing with the government, stated that Section 433, quote, is not limited to situations in which service is recognized as employment or its equivalent under the systems of both countries, but rather extends to employment or self-employment or any service which is recognized as equivalent to employment or self-employment under this subchapter or the Social Security system of a foreign country which is part of such an agreement. And here, it's clear that Canada does recognize the service of Ms. Beeler and the other beneficiaries as employment, and they're receiving Canada Pension Plan benefits accordingly. With respect to the agreements being silent on employment, that is true. There's not a definition in the U.S.-Canada or U.S.-Quebec agreement of employment. However, those agreements do discuss what employment is when defining period of coverage. And again, we're talking about coverage under an international agreement. And in Article VI, Section 1 of the U.S.-Canada agreement, period of coverage is defined to mean a period of payment of contributions or a period of earnings from employment or self-employment as defined or recognized as a period of coverage by the laws under which such period has been completed. So that is, you know, again, the service can be completed under the laws of one party to the agreement or the other party to the agreement. Here, Ms. Beeler and others completed service under Canada, and therefore, that constitutes employment under the terms of the agreement. Now, some countries, the windfall elimination, of course, will apply to people receiving benefits from some countries, countries with which the United States does not have an agreement. I don't think there's any dispute that if the beneficiaries here came from a country with whom the United States does not have an agreement, the windfall elimination could be applied to the social insurance payments they were receiving. And so the government here is really trying to read out an entire portion of the statute, and the court should reject that interpretation. Just briefly addressing the argument concerning the equal protection section, it's never been beneficiaries' contention that the United States and Canada must have the same laws with respect to benefits. And, in fact, we acknowledge and point out that Canada provides actually much lower benefits under the CPP than the United States provides under social security payments. However, and this again, we're looking at the Eshel case cited in our briefs, where the D.C. Circuit recognized that it is our responsibility to read them, which are international agreements, in a manner consistent with the shared expectations of the contracting parties. And here there was no expectation that benefits would be unilaterally reduced by one country based on receipts by another, as evident by the Canadians' action in this case. And so for that reason and the other reasons expressed in our argument and our briefs, we ask that the court reverse the district court and order judgment in favor of the plaintiffs. Thank you. Thank you very much. The case is taken under advisement.